UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

*Plaintiff*,

*vs.* Case No. 25-cr-75-jdp

JEVON SMITH,

*Defendant*.

---

## MOTION TO DISMISS

Jevon Smith, by counsel, moves to dismiss count one of the indictment, which charges him with unlawfully possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The defense challenges the application of § 922(g)(1) to Smith, a citizen with no recent convictions for a felony crime of violence. Under *Bruen*, the government may only restrict someone's access to guns and ammunition if it can show that such a restriction is consistent with the country's historical tradition of firearm regulation.[1] In this case, it is not. When the Second Amendment was ratified, this country did not categorically and permanently disarm all felons. Rather, Founding-era regulations temporarily targeted those who posed an imminent physical threat of harm to others, allowing them to rearm when the threat they posed dissipated.[2] Given that

[1] *N.Y. State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1, 17 (2022).
[2] *United States v. Rahimi*, 602 U.S. 680, 693–95 (2024).

Smith has no recent convictions for violent felony offenses, § 922(g)(1) is unconstitutional as applied to him.

The defense acknowledges that this Court has denied the same argument in prior cases and anticipates a similar ruling here. Thus, this motion is filed for purposes of preservation and exhaustion.

1. **Applying *Bruen's* first step: Smith's regulated conduct is protected by the Second Amendment.**

Under *Bruen*, this Court's first question is whether the Second Amendment's plain text covers Smith's conduct being burdened by § 922(g)(1).[3] Section 922(g)(1) categorically prohibits him from possessing a gun, "even for a lawful purpose such as self-defense."[4] This absolute ban prevents him (without exception) from "keeping and bearing Arms."[5] Thus, the government cannot dispute that firearm *possession* is protected conduct,[6] and because the Second Amendment covers Smith's possession, "the Constitution presumptively protects that conduct."[7]

Although this Court has previously concluded that the Seventh Circuit in *Gay* foreclosed an as-applied challenge such as this one, the defense maintains that *Gay*'s reasoning and failure to proceed to *Bruen*'s second step is irreconcilable with the Supreme Court's approach in *Rahimi*.[8] There, the Court considered a *Bruen* challenge to § 922(g)(8). The government argued that the challenge failed at *Bruen*'s first step because "*Heller* and

[3] *Bruen*, 597 U.S. at 17.
[4] *See United States v. Jackson*, 622 F. Supp. 1063, 1066 (W.D. Okla. 2022).
[5] U.S. Const. amend. II (cleaned up).
[6] *United States v. Hale*, 717 F. Supp. 3d 704, 711 (N.D. Ill. 2024).
[7] *See Bruen*, 597 U.S. at 17.
[8] *Rahimi*, 602 U.S. at 693–95.

*Bruen* add a gloss on the Second Amendment that restricts its applicability to only 'law-abiding, responsible citizens.'"[9] The Fifth Circuit rejected that theory and proceeded to *Bruen* step two.[10] The Supreme Court did the same: it "reject[ed] the Government's contention that Rahimi may be disarmed simply because he is not 'responsible,'" explaining that no such rule "derive[d] from our case law."[11] Thus, the Court resolved the Second Amendment challenge to § 922(g)(8) by proceeding to *Bruen*'s second step.[12]

Following *Rahimi*, the analysis in *Gay* is no longer good law. In rejecting an as-applied challenge to § 922(g)(1), the Court wrote that Gay wasn't a "law-abiding, responsible" citizen (as evinced by his many convictions).[13] Thus, the *Gay* Court did not proceed to *Bruen*'s second step.[14] That approach does not survive *Rahimi*.[15] Again, the defense recognizes that the Court's prior rulings foretell the denial of this motion.[16] Whether a challenge to § 922(g)(1) can be resolved at *Bruen*'s first step will likely be addressed by the forthcoming decision in *United States v. Prince*, No. 23-3155 (7th Cir.).[17]

---

[9] *United States v. Rahimi*, 61 F.4th 443, 451 (5th Cir. 2023).
[10] *See id.*
[11] *Rahimi*, 602 U.S. at 701.
[12] *See id.* at 690–98.
[13] *United States v. Gay*, 98 F.4th 843, 846–47 (7th Cir. 2024) (quoting *Bruen*, 597 U.S. at 26, 70).
[14] *Id.*
[15] 602 U.S. at 701.
[16] *See, e.g., United States v. Benton*, 24-cr-73, dkt. no. 21 (W.D. Wis.).
[17] *See also United States v. Mosby*, No. 24-1851, 2025 WL 289401 (7th Cir. Jan. 24, 2025) (holding motion to withdraw pursuant to *Anders v. California* in abeyance pending the resolution of *Prince*).

2. **Applying *Bruen's* second step: § 922(g)(1)'s application to Smith is inconsistent with the Second Amendment's historical tradition.**

*Bruen*'s second question is whether permanently disarming felons is consistent with this Nation's "historical tradition of firearm regulation."[18] Attempts to permanently disarm felons didn't begin until the early twentieth century—well over one hundred years after the Second Amendment's ratification. Before that, the most analogous firearm regulations temporarily disarmed only those who threatened imminent harm to others.[19] Because § 922(g)(1) imposes a permanent disarmament on Smith despite a lack of violent felony convictions, the statute as applied to him is inconsistent with the Second Amendment's historical understanding and original meaning.

Prior to the Founding, the colonies' attitude toward disarmament diverged from their English roots. While England "had a long history of disarming citizens for any reason or no reason at all," such as disarming Catholics, the colonies "consistently refrained from exercising such a power over citizens."[20] A historical survey of all session laws passed by the first fourteen states from 1607 to 1815 uncovered not "a single instance in which these jurisdictions exercised a police power to prohibit gun ownership by members of the body politic."[21]

Consistent with the country's Founding-era aversion to disarming broad categories of the people, the states passed no laws in the eighteenth century disarming

---

[18] *Bruen*, 597 U.S. at 17.

[19] *See Rahimi*, 602 U.S. at 698.

[20] Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 L. & Hist. Rev. 139, 157 (2007).

[21] *Id.* at 161 n.53.

felons. As then-Judge Barrett put it, "Founding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons."[22] To the contrary, even Founding-era laws disarming people who engaged in insurrection provided for the restoration of "their arm rights" once "the perceived danger abated."[23]

In short, § 922(g)(1) isn't a longstanding regulation; its roots lie in the 1961 Amendment to the Federal Firearms Act (a bill passed in 1938 that disarmed only those convicted of a "crime of violence").[24] Congress' actions in 1961 shed no light on the Second Amendment's original meaning when it was ratified in 1791. That's because regardless of whatever timeframe the Supreme Court might establish in the future, a law passed in 1961—some 170 years after the Second Amendment's ratification and nearly a century after the Fourteenth Amendment's ratification—falls short "for purposes of demarcating the scope of a constitutional right."[25]

In contrast, a tradition that *is* longstanding is disarming those who pose a "clear threat of physical violence to another."[26] Regulations disarming dangerous people permeate American history in the form of surety laws and going armed laws.[27] Likewise, then-Judge Barrett wrote that "founding-era legislatures categorically disarmed [those]

---

[22] *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting); *see also id.* at 458 ("[N]either the convention proposals nor historical practice supports a legislative power to categorically disarm felons because of their status as felons.").

[23] *See* Joseph G.S. Greenlee, *The Historical Justification for Prohibiting Dangerous Persons from Possessing Firearms*, 20 Wyo. L. Rev. 249, 268 (2020).

[24] *Id.* at 699*; see also* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342, 75 Stat. 757 (1961); Federal Firearms Act, ch. 850, § 1(6), 52 Stat. 1250, 1250 (1938).

[25] *Range v. Att'y Gen. United States*, 124 F.4th 218, 229 (3d Cir. 2024) (en banc).

[26] *Rahimi*, 602 U.S. at 698.

[27] *Id.*

whom they judged to be a threat to public safety."[28] Thus, consistent with *Bruen*, Congress can disarm dangerous people "found by a court to present a threat to others" because that comports with the historical tradition of firearm regulation.[29]

With no recent violent felony convictions on his record, Section 922(g)(1) is unconstitutional as applied to Smith. His last felony conviction occurred seven years ago for fleeing and eluding, as well as second-degree recklessly endangering safety.[30] The Seventh Circuit has held that a mental state of recklessness is not a "crime of violence" for purposes of career offender.[31] And likewise, it has held the same under the Armed Career Criminal Act.[32] Fleeing or eluding has no element of intentional violence. And even if these offenses *were* considered violent or dangerous enough to result in a deprivation of the right to bear arms, they certainly could not justify a permanent deprivation for someone who hasn't recently been found by a court to present a threat to others. Thus, § 922(g)(1) as applied to him isn't analogous to Founding era firearm and ammunition regulations, given that it imposes a far greater burden on his right to armed self-defense.

---

[28] *Kanter*, 919 F.3d at 458.
[29] *See Rahimi*, 602 U.S. at 698.
[30] *State v. Smith*, Milwaukee County Case No. 2019CF3638.
[31] *United States v. Hill*, 372 Fed. Appx. 656, 657 (7th Cir. 2010); *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009).
[32] *United States v. High*, 576 F.3d 429 (7th Cir. 2009).

## CONCLUSION

Section 922(g)(1) is inconsistent with the country's historical tradition of firearm regulation as applied to Smith, a citizen with no felony convictions for crimes of violence. The historical analysis mandated by *Bruen* requires the indictment's dismissal.

Dated at Madison, Wisconsin this 30th day of September, 2025.

Respectfully submitted,

Jevon Smith, Defendant

*/s/ Guy Cardamone*

Guy J Cardamone
Associate Federal Defender
FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
guy_cardamone@fd.org