UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

*Plaintiff,*

*vs.* Case No. 25-cr-75-JDP

JEVON SMITH,

*Defendant.*

## MOTION TO SUPPRESS

Jevon Smith, by counsel, moves to suppress evidence obtained from a search of his cellphone. Shortly after seizing Smith's phone, police plugged it into a forensic tool called GrayKey, shielding its data from a security feature that automatically reboots the phone after 72 hours of inactivity. With GrayKey, they bypassed the phone's locked screen, entered its private space, and manipulated its data—placing it into an unencrypted state "indefinitely." That entry, access, and manipulation of the data inside Smith's phone was a warrantless search. And a warrantless search of a cellphone under *Riley* violates the Fourth Amendment. Thus, the fruits of that search must be suppressed.[1]

[1] The defense respectfully requests a hearing on this motion.

## FACTS

Sometime around 8:00 a.m. on June 15, 2025, City of Fitchburg Detective Brett Hammermeister received notice that police within his department had recently seized two cellphones.[2] The phones had been found inside a car at McKee Farms Park, alongside cocaine, marijuana, and a gun.[3] There were also two people inside the car, Jevon Smith and Christopher Wright.[4] Both had been napping while the rest of their family were in the pavilion nearby.[5]

Of the two phones, only one had a clear owner.[6] It was an iPhone in a blue case, which had been taken directly from the front passenger, Christopher Wright.[7] The other phone (later associated with Jevon Smith) had been found sitting face up in the front center console, with a black case.[8] The two phones were seized, tagged, and transported to the Fitchburg police department.[9]

Although the phones had been placed into airplane mode, Hammermeister was still concerned.[10] He knew iPhones running the latest iOS 18 operating system had "an inactivity timer," which after 72-hours triggers a reboot of the device.[11] According to him, if the iPhone rebooted, it would go from a state called "After First Unlock" to "Before

[2] Exhibit A – Supplement Report (Det. Hammermeister)
[3] Exhibit B — Primary Report (Ofc. Greene)
[4] *Id.*
[5] *See* Bates 3297.
[6] Exhibit B, Bates 3235.
[7] *Id.*
[8] *Id.*
[9] Exhibit A.
[10] *Id.*
[11] *Id.*

First Unlock."[12] Without the passcode, this would result "in an extraction with limited data."[13] It's not clear how he knew the phones were running iOS 18, but he believed these phones presented a risk of being reset.[14] And to avoid this, rather than immediately apply for a search warrant, he decided to use a forensic tool called GrayKey to force his way into the phones, manipulate the data, and prevent it from being encrypted.[15]

GrayKey is a digital forensics product sold by a company called Magnet Forensics, headquartered in Waterloo, Canada.[16] Magnet Forensics describes itself as providing "Advanced digital investigations solutions for every industry."[17] But the company mainly offers products designed for military and intelligence sectors, as well as "public safety" or law enforcement.[18] Among their list of products is Magnet GrayKey (or "GrayKey"), which they advertise as providing police with "same-day access to the latest iOS and Android devices—often in under one hour."[19]

Unsurprisingly, the icon for GrayKey is literally a gray key.[20] And it appears to function like any other key: it unlocks cellphones. Police can "[u]se GrayKey to consistently unlock leading iOS and Android devices to help [them] get the evidence

---

12 *Id.*
13 *Id.*
14 *Id.*
15 *Id.*
16 https://www.magnetforensics.com/
17 *Id.*
18 *Id.*
19 https://www.magnetforensics.com/products/magnet-graykey/
20 *Id.*

[they] need."[21] They boast that this tool gives police the ability to "access and extract evidence from mobile devices irrespective of device state."[22]

Now, GrayKey can also prevent the iPhone from shielding data through encryption following a reboot or reset. According to Magnet's own experts, when an iPhone reboots, its data becomes encrypted.[23] "Apple," they write, "protects its file system" using "class" levels, and after it reboots, the data "gets returned to its most secure state."[24] For anyone who owns an iPhone, this is why incoming text messages and updates after a reboot appear on the lock screen without the information.[25] Until the user *opens* the phone, those messages are encrypted or hidden behind the phone's security features, buried deep in the innermost part of the phone's software.[26]

This state of things on the phone is a mode known as "Before First Unlock" (or "BFU" mode) in the forensic community.[27] In November of 2024, Apple released the latest version of its operating system, iOS 18, which included a new security feature forcing an automatic reboot of the phone if after 72 hours it had not been unlocked or used.[28] In practical terms, this secured the phone (sooner rather than later) in the event that it was lost, stolen, or otherwise seized by potential intruders.

---

[21] *Id.*
[22] *Id.*
[23] Exhibit C - Understanding the security impact of iOS 18's inactivity reboot – Magnet Forensics.
[24] *Id.*
[25] https://blogs.dsu.edu/digforce/2023/08/23/bfu-and-afu-lock-states/
[26] *Id.*
[27] *Id.*
[28] Exhibit C.

When Magnet discovered the new security feature, it issued a recommendation to its users instructing them on how to prevent it.[29] The answer, they said, was to plug the device or phone into the GrayKey tool preemptively.[30]

Later on, Magnet offered a new tool free to current users called "GrayKey Preserve."[31] What "Preserve" actually does is not publicly available. Magnet insists that this new software gives police "the tools [they] need to preserve the data on iOS devices *indefinitely* in just minutes, while also maintaining the privacy of the data."[32] However, they have not published the exact mechanism for how this is done.

Based on information and belief, GrayKey's indefinite preservation of the iPhone's data in its unencrypted state suggests that the tool is doing either one of two things: (1) disabling the automatic reboot by forced entry and manipulation of the phone's core code; or (2) copying that data and preserving it somewhere on the phone, making it available to police but no longer vulnerable to encryption. Either way, the program is manipulating data contained *within* the iPhone—not on its public facing surface.

According to his report, all Hammermeister knew was that the iPhone's security features had changed and that GrayKey could bypass it, but he and his department did not have one. So, he took the phones to the Middleton Police Department, who did.[33]

---

[29] *See* Bates 3193.
[30] *Id.*
[31] Exhibit D – The importance of preservation for iOS devices – Magnet Forensics.
[32] *Id.*
[33] Exhibit A.

He plugged Smith's phone into GrayKey at around 9:30 a.m. and "Enabled Evidence Preservation Mode."[34] According to his report, GrayKey "successfully placed the cell phone in evidence preservation mode," which Hammermeister claims protected the evidence "without imaging it."[35]

Two days later, on June 17, 2025, Detective Wiza with the City of Fitchburg PD drafted a search warrant for both phones, including Smith's.[36] He included in the complaint the fact that Hammermeister had already used GrayKey.[37] He also noted that he too had been informed by Middleton Police Department Detective Daniel Jones that "in November of 2024, GrayKey issued a recommended practice to connect the device (phone) to GrayKey which will stop the process of the phone going into an inactive mode, rebooting the phone and potentially losing all the data."[38] He informed the judge that Detective Hammermeister had "connected both Apple iPhones to GrayKey and to preserve data and evidence related to this evidence."[39] He maintained that "[n]o data will be searched or viewed until a signed search warrant has been provided," and that "[t]his process is only done to preserve evidence from being lost from a reboot of the device (phone)."[40] He did not aver—nor has anyone—that GrayKey did not break into the phone and do *something* to the data on Smith's phone.[41]

---

34 *Id.*
35 *Id.*
36 *Id.*
37 Bates 3184–3197.
38 Bates 3193.
39 *Id.*
40 *Id.*
41 Bates 3184–3197.

## LEGAL ARGUMENT

Well before there was TikTok, Apple Watches, and 5G cellular internet speeds, the Supreme Court in 2014 observed that the modern cell phone is such a pervasive and insistent part of daily life that "the proverbial visitor from Mars might conclude they were an important feature of human anatomy." *Riley v. California*, 573 U.S. 373, 385 (2014). The Court's answer back then to the question of what police must do before searching a cell phone was "accordingly simple—get a warrant." *Id.* at 403. That remains the answer today. But the police in this case did *not* get a warrant until two days later; instead, they plugged Smith's phone into GrayKey within hours of having seized it, entered the phone's internal space, and manipulated its data for purposes of a later extraction.

What's long been clear since *Riley* is that "law enforcement officers cannot affirmatively access an arrestee's cell phone." *See United States v. Brixen*, 908 F.3d 276, 282 (7th Cir. 2018) (explaining that "*Riley* concerned affirmative manipulation of a cell phone in order to retrieve information from *within* the phone.") (emphasis added). Courts have accordingly upheld the suppression of evidence obtained by the warrantless entry into, and manipulation of, the internal data in a cellphone. *See, e.g., United States v. Kopankov*, 672 F. Supp. 3d 862, 867 (N.D. Cal. 2023) (suppressing evidence obtained by the physical invasion into a cellphone using GrayKey and copying of its data); *United States v. Sam*, No. CR19-0115-JCC, 2020 WL 2705415, at *2 (W.D. Wash. May 18, 2020) (suppressing evidence obtained by powering on a phone to take a photo of the phone's lock screen); *Cf. Brixen*, 908 F.3d at 281 (denying suppression where police merely called a phone but

did not "open or otherwise manipulate" the phone or "gain access to any of the phone's content or attempt to retrieve any information from within the phone.").

While the exact mechanism by which GrayKey "Preserve" bypasses the iPhone's security feature is unknown, to avoid the phone's automatic reboot and make its data available to law enforcement for an "indefinite" period, the tool must be able to defeat the phone's lock screen, gain unauthorized access to its data or its hardware, and manipulate that data for future extraction. Whether it is seizing it, copying it, or reformatting the phone's software, it is entering a constitutionally protected space, *Florida v. Jardines*, 569 U.S. 1, 5 (2013), and gaining access to all the "privacies of life" residing within its aluminum frame, *Riley*, 573 U.S. at 403. To show otherwise, the government would have to demonstrate that the tool did not access the internal data of the phone, or that the information or data inside the phone was not manipulated and altered for the purpose of later downloading, extracting, and viewing it. This they cannot do.

Thus, by initiating a search of Smith's phone without a warrant, the government's search was presumptively unlawful. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). The default is that a search or seizure is unreasonable unless conducted pursuant to a warrant or one of the well-recognized exceptions to the warrant requirement. *Arizona v. Gant*, 556 U.S. 332 (2009); *United States v. Jenkins*, 850 F.3d 912, 917 (7th Cir. 2017). The government bears the burden of proving that a warrantless search falls within a recognized exception, by a preponderance of the evidence. *United States v. Basinski*, 226 F.3d 829, 833–34 (7th Cir. 2000). Here, they cannot carry that burden.

Hammermeister's suggestion that Apple's use of encryption to protect a phone's data created an exigency is inconsistent with the Supreme Court's recent decisions. The Supreme Court addressed the risk of encryption directly in *Riley*. *Id*. at 389–90. It recognized that the issue wasn't raised because at that time, most cellphones were seized *in* an encrypted state already. *Id*. Yet the Court acknowledged that in the rare circumstances where it's *now or never*, there may be exigent circumstances justifying a warrantless search: "for example, circumstances suggesting that a defendant's phone will be the target of an imminent remote-wipe attempt . . .." *Id*. at 391. Here, Hammermeister had no reason to suspect Smith's phone was about to be wiped. The data would remain on the phone. And more importantly, there was no imminent danger of the loss of its information: they had only just seized the phone. He had no reason to believe it had been idle for anywhere close to 72-hours. Just the opposite.

Nor is there any reason Hammermeister couldn't have obtained a warrant that same morning. The *Riley* Court specifically noted the modern efficiencies for obtaining warrants, referencing its recent decision in *Missouri v. McNeely*. *Riley,* at 391. In *McNeely*, the Court rejected an argument that dissipating BAC evidence in drunk drivers created a *per se* exigency, given the modern efficiencies for getting a warrant. 569 U.S. 141, 151-152; *see also id.* at 173 (Roberts, C.J., concurring in part and dissenting in part) (describing a jurisdiction where "police officers can e-mail warrant requests to judges' iPads" and "judges have signed such warrants and e-mailed them back to officers in less than 15 minutes"). This was not the sort of situation where data, like the alcohol in *McNeely*, was dissipating minute-by-minute. Hammermeister could've secured a warrant. He chose not

to and then manipulated the phone's data. In the absence of a warrant and an exigency, that violated the Fourth Amendment.

**CONCLUSION**

Using GrayKey, police bypassed Smith's phone's locked screen, entered its private sanctum, and manipulated its data. This internal and highly-sensitive information was protected under the Fourth Amendment, and it was accessed without a warrant. That access and manipulation of the data inside Smith's phone was a warrantless search, and under *Riley*, it violated the Fourth Amendment. Thus, the fruits of that search must be suppressed.

Dated at Madison, Wisconsin this 30th day of September, 2025.

Respectfully submitted,

Jevon Smith, Defendant

*/s/ Guy Cardamone*

Guy J Cardamone
Associate Federal Defender
FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
guy_cardamone@fd.org