FITCHBURG POLICE DEPARTMENT
5520 Lacy Road
Fitchburg, WI 53711
608.270.4300
www.fitchburgwi.gov/police

Primary Narrative Printed on June 16, 2025

# Primary Report By Nikolas Greene

**Case #FP25-13116**
**Typed By Valarie Clement**

## INITIAL INFORMATION

On June 15, 2025, I was on duty, in full police uniform, and operating fully marked squad #18, for the City of Fitchburg Police Department. I was working the 7:00 a.m. to 7:00 p.m. shift and wearing a department-issued body-worn camera during this incident.

## CALL INFORMATION

On June 15, 2025, I was driving in the parking lot of McKee Farms Park at 2930 Chapel Valley Road conducting random patrol of the parking lot. As I did so, I located a gray 2018 Mercedes Benz GLC coupe bearing Wisconsin registration AZF6418. The Mercedes was parked in a handicap parking stall and did not have a parking placard hanging on the rear-view mirror and did not have handicap plates. When I saw this, I also saw there was a black male in the driver's seat and a black male in the passenger seat. Both appeared to either be sleeping or potentially overdosing on narcotics, something I have seen numerous times in vehicles. I conducted a records check of the vehicle and repositioned squad #18 behind the gray Mercedes and notified Fitchburg dispatch.

## PERSONS IDENTIFIED

**Jevon A. Smith (Arrestee/Offender)**
Identified via a Wisconsin driver's license.

**Christopher L. Wright (Arrestee/Offender)**
Identified via a Wisconsin identification card.

**Leana S. Mcmurtry (Mentioned)**
Identified verbally.

## TRAINING AND EXPERIENCE

I have been employed as a police officer for over ten years. I have received both formal and informal training on narcotics as well as behaviors associated with narcotic use. During this training, I learned Basic Drug Recognition and Drug Characteristics. I was trained in the use of the Nark II brand drug test kits and the Detechtachem brand test kits. During the course of this training, I was trained on the characteristics of narcotics as well as narcotic paraphernalia. I have also conducted and assisted in drug investigations throughout my employment.

## BLUNT

Based on my training and experience, I know that individuals who smoke marijuana will often hollow out the contents of cigars and then stuff them with marijuana, at which time the cigars are smoked. "Blunt" is a street term for marijuana smoked in a cigar wrapper. I also know that individuals who use this method to smoke marijuana, often use the Swisher Sweet brand cigars which are inexpensive and located at most convenience stores.

**VEHICLE CONTACT**

I exited squad #18 and proceeded to the passenger side of the Mercedes and began to look inside. I was able to immediately recognize a blunt that was sitting on a piece of plastic dash near the center console area between the driver's seat and passenger seat. I immediately recognized zip lock style packaging consistent with marijuana from my experience which is a zip lock style packaging with various colors also on the center console between the driver's seat and passenger seat.

Just as I was about to knock on the window, a female approached and asked if I needed something. I walked towards the female who began to walk towards me. I told the female that there were two people inside of the vehicle at which time she told me they were family and they were just tired and sleeping. This female continued approaching me and then walked past me to the vehicle. The female positioned her body in between me and the vehicle and began to say "What, what, what? What do you need?". This appeared to be an attempt to dis-sway me from have contact with the vehicle and the subjects inside.

The female demanded for me to give her some space and wanted me to back away so she could wake up the two male inside of the Mercedes. I told the female I would not back up. I requested additional officers to the scene as the female got the attention of someone else that she was with. I told the female that she could step to the left and I began knocking on the window. I asked via radio for officers to step up their response due to the female's change in demeanor and because an additional male arrived on scene. I told the female that if she did not back up that she would be detained. The female then walked away and went to the drivers side of the vehicle where another male had walked up to the drivers side of the vehicle. After this I told the other male that he should also backed away. Neither one of these individuals ended up being identified on scene, even though attempts were made.

After knocking on the window, both the driver and passenger appeared to be lethargic and were slow in waking up and slow on their responses. The male in the passenger seat rolled his window down but then rolled his window back up. Officer Dodge responded to the scene and assisted me. The passenger provided a Wisconsin identification card, at which time I identified him as Christopher L. Wright. Next, I attempted to get the ID from the driver. Ultimately the driver woke up and was identified via a Wisconsin driver's license as Jevon A. Smith.

**CONTACT WITH SMITH**

Officer Hooper and Officer Stefanski also arrived on scene to assist me. Once they arrived, I proceeded to the driver's side of the Mercedes and requested Smith step out of the vehicle. Officer Dodge was still on the driver's side of the vehicle and Smith cooperated and stepped out of the vehicle. Smith was directed to the back of the Mercedes and to squad #18. As I spoke with Smith, he denied initially there was any drugs inside of the vehicle and denied there were any weapons. Smith ultimately admitted there was marijuana inside of the vehicle. Next, I asked Smith who the vehicle belonged to. Smith told me it was a rental vehicle that his girl had rented through Toro. I later learned Toro is a vehicle rental app, similar to Airbnb where subjects can rent a vehicle from a private person. After this, I patted Smith down for weapons and Officer Dodge and I had Smith sit in the back of squad #18.

## CONTACT WITH WRIGHT

I returned to the Mercedes on the passenger side and requested that Wright step out of the vehicle. Wright had a cellphone in his hand and was on a call at the time. I asked right to hang up the phone and put the phone down. Wright placed the phone onto the hood of the Mercedes on the passenger side next to the front pillar and where the door hinges are. This phone was later collected and determined to be a black Apple Iphone with a blue colored case. I directed Wright to Officer Dodge's squad. Wright told me the vehicle belonged to Smith. I conducted a pat down search of Wright and placed him into the back of Officer Dodge's squad with the assistance of Officer Hooper.

## VEHICLE SEARCH

Due to the blunt near the dash/center console and the suspected marijuana packaging I had observed when looking inside of the vehicle, I began a search of the Mercedes. As I did so, I located a pistol, which I immediately recognized to be Glock in the center console. The Glock was upside down with the magazine and grip facing upward. I later learned this was a Glock 29 chambered in 10mm with serial number BPGH002. I paused my search and notified Fitchburg dispatch of the firearm that had been located. I then waited until additional resources arrived on scene to assist. A short time later, I began taking photographs of the exterior of the Mercedes up to and leading to the interior of the Mercedes where the Glock pistol was located.

After numerous photographs were taken, Officer Stefanski asked how he could assist. I asked Officer Stefanski to grab paper bags so the firearm could be recovered. Officer Stefanski did so, at which time I donned two pairs of latex gloves. I retrieved the Glock pistol from the center console. Officer Hooper utilized the department-issued cell phone that I had previously been taking photographs with, and took photographs of the Glock pistol. The pistol magazine was removed and placed into a brown paper bag. The slide was locked to the rear with as minimum handling of the firearm as possible. When doing so, a 10mm projectile was ejected from the chamber into the brown paper bag that was already holding the magazine from the firearm. Officer Hooper took additional photographs of the serial numbers. Once she was done, I looked closely at the firearm and noticed there was a machine gun conversion device also known on the street as a "Switch." This Switch can be used so that with one pull of trigger multiple rounds of ammunition can be fired. The Glock was then placed into a seperate brown paper bag. Officer Stefanski secured these inside of squad #18. The firearm and magazine with the ejected 10mm round were later transported to the Fitchburg Police Department and placed into temporary locker #23.

## POSSESSION WITH INTENT TO DELIVER

I know there is a potential for profit from drug sales which lies in the dealer's ability to purchase in large quantities and then sell in smaller quantities. It is in the best interest of the seller and drug transactions to divide the product as many times as possible and sell multiple small increments. Contrariwise, it is in the interest of the purchaser to purchase in a single, large increment to achieve a lower cost per weight ratio. Possession of multiple numbers of packages of controlled substance is indicative of possession with intent to deliver and not personal use.

## SANDWICH AND ZIP LOCK BAGGIES

Based on my training and experience, I know illegal drugs are commonly packaged in clear plastic sandwich style baggies and zip lock style baggies. The presence of such baggies, even without the accompaniment of illegal drugs can be significant and potentially represent past packaging activity or the intent of future packaging activity.

## VEHICLE SEARCH CONTINUED

Continuing the search of the vehicle, I located a red and black colored backpack with Jordan branding on the exterior of the backpack. As I searched the backpack, I located numerous zip lock style baggies with different coloring and designs that are consistent with the packaging of marijuana for resale. This baggies had the wording FROSTY NERDZ with a weight of 3.5 grams on the bottom of the packaging. There were many of these packages and they were rubber banded together. The amount banded together did not appear to be for personal use.

Also, inside this red backpack, was two clear plastic bags with a green leafy substance inside of it, which from my training and experience appeared to be marijuana. Due to the amount and size, this did not appear to be personal use. Lastly I located a prescription pill bottle inside the red backpack. The prescription label was partly ripped off where the name should be for the subject prescribed the medication. The label advised that it was for the medication Gabapentin 800 mg dosing. Inside the pill bottle was numerous white in color tablets which appeared to be consistent with the prescription of Gabapentin.

Officer Hooper conducted a vehicle search on the driver's side of the vehicle. As she did so, she advised she had located a clear plastic bag with a white powdery substance inside it. This white powdery substance appeared to be cocaine. All narcotics on scene were collected and transported to the Fitchburg Police Department for testing.

## ARREST/TRANSPORT

Smith and Wright were placed under arrest. They were handcuffed and searched incident to arrest and placed into the back squad #18, as well as the squad that Officer Dodge was operating. Smith and Wright were transported to the Fitchburg Police Department and escorted into the booking room. Wright was escorted into an interview room inside of the booking room and Smith was placed into a secure holding cell. A Fitchburg Police Department secure holding log was completed for Smith.

## FELONY CONVICTIONS

A records check was completed for Smith. During this check it was learned that Smith is a convicted felon in the state of Wisconsin under cases 2013CF001952 and 2019CF003638. In case 2013CF001952 Smith was convicted for Manufacture/Deliver Heroin (>3-10g). In case 2019CF003638 Smith was convicted of Flee/Elude an officer and Second Degree Recklessly Endangering Safety.

A records check was completed for Wright. During this check it was learned that Wright is a convicted felon in the state of Wisconsin under case 2017CF004469 Possess Firearm-Convicted of a Felony as well as several other felonies.

## WRIGHT MIRANDA WARNING

Officer Dodge and I proceeded into the interview room where Wright was seated. I read Wright his Miranda Warnings from a department-issued Miranda Warnings card. Wright told me he understood his rights and did not wish to make a statement at this time.

## WRIGHT BUCCAL SWAB

After reading Wright his Miranda Warnings, I asked if he would be willing to provide a DNA sample from

the inside of his mouth, utilizing a Buccal swab. Wright told me he was not willing to provide that sample. After this, Wright was escorted to a secure holding cell and placed inside. A Fitchburg Police Department secure holding log was completed for Wright.

**SMITH MIRANDA WARNING**

Smith was removed from the secure holding cell and escorted to the interview room. Smith was directed toward a chair, at which time I read Smith his Miranda Warnings from a department-issued Miranda Warning card. Smith understood his rights and told me he was willing to speak with me.

**INTERVIEW WITH SMITH**

Smith again told me the Mercedes had been rented by his girlfriend who he identified as Leana S. McMurtry. According to Smith, McMurtry rented the car approximately two days ago from Toro. Smith again admitted there had been weed in the car, at which time he explained the weed that was in the center console was approximately eight to nine grams.

I asked Smith who was in the vehicle with him and Smith explained he had driven from Milwaukee with his blood cousin, Christopher L. Wright. Smith also told me he had driven with a family friend who he has known for years by the name of Dontrae. Smith told me he did not know Dontrae's last name, but also referred to him as KD, which is Dontrae's nickname. As I asked if anyone else was inside of the vehicle, Smith began to ask me what else was in the car. It was at this point that I leveled with Smith and told him that we had located a firearm as well as cocaine and a large amount of marijuana. Smith acted shocked at this news and denied any knowledge of the firearm, cocaine, and large amount of THC. Smith told me he did not know there was a firearm in the center console and told me he had been in the center console earlier in the day to get change to put air in the tire at a gas station. Smith told me there was no firearm when he opened the center console of the vehicle.

I attempted to gather a timeline of the day's events for Smith. Smith explained that Dontrae had driven to Johnson Creek and had made a stop at the 414 shop. Smith's initial explanation of this was difficult to follow; however, I learned that Smith had picked up Wright and Dontrae and they had gone to the 414 shop in Milwaukee so Dontrae could pick up a tee shirt and when Dontrae was done, he began to drive from this location to Johnson Creek. Smith further explained they had missed their exit and Dontrae had pulled over into a small motel parking lot while Smith used his phone to get GPS directions. Smith told me he then drove the rest of the way from Johnson Creek to Madison.

Gathering additional information about the timeline of today's events, I again had trouble following Smith's story. Smith told me he knows Dontrae to carry firearms and has had firearms in the past. Smith told me he did not see Dontrae with a firearm today, but believed if anybody had a firearm it would have been Dontrae. Smith explained he had kept the vehicle key in a pocket in his hoodie and had left the vehicle unlocked. Smith explained because of this, anyone could have gone back to the vehicle and referenced Dontrae. Smith told me he had been at the party for approximately one to one and a half hours and then went to the Mercedes with Wright and smoked marijuana.

Smith confirmed he knew he was a felon and denied any knowledge of the firearm inside of the vehicle. Wright told me he never touched the firearm, denied his DNA would be on the firearm, and told me he did not know what the firearm would sound like if it was fired.

Smith descried Dontrae as wearing a gray Hellstar brand hoodie sweatshirt. According to Smith the hoodie has the Hellstar logo with lines on the chest and possibly the name of Hellstar on the sleeves. Dontrae was also wearing dark jeans and Smith did not believe Dontrae had a backpack. When

speaking of Dontrae Smith told me that he did not see anything that would have led him to believe that Dontrae had a gun. I referenced Dontrae pinning an arm to one side or sagging pants for Smith. Smith told me that he did not notice either of these.

I asked Smith about the backpack in the backseat of the Mercedes and referenced it as a red backpack. This backpack was red and black with a Michael Jordan logo. Smith told me he did not know anything about a red backpack and told me he had an Under Armour brand backpack. I told Smith about the marijuana inside of the backpack, which he denied any knowledge of. Smith told me the only marijuana he had was approximately eight to nine grams and it would have been on the center console. I asked smith to describe the packaging of the marijuana he had and he described a clear zip lock style baggie with marijuana and marijuana shake inside of the bag. I recalled there were no clear zip lock style bags in the front of the vehicle during the vehicle search.

Smith told me he was not exactly sure of the placement of the marijuana in the front and referenced without prompting that he may have placed it in his Under Armour backpack and thrown it into the rear of the vehicle explaining it may have landed in the rear hatch space of the SUV. I later confirmed there was no Under Armour backpack in this area with Sergeant Ridgely, who I had seen searching that area of the vehicle. When I had searched the red Jordan backpack, I had located two clear plastic bags with suspected marijuana inside of them. This type of packaging would have been consistent with the packaging Smith described as being his marijuana.

**SMITH - BUCCAL SWAB**

I asked Smith if he would be willing to provide a DNA sample utilizing a Buccal swab. Smith said he was willing to provide a sample and completed a consent form, which is attached to this report.

Utilizing a pair of rubber gloves and two sterile Buccal swabs, I took a sample from the inside of Smith's mouth on the right and left cheek. Both of these swabs were then placed into a cardboard box, which were later packaged and placed into evidence.

**SECOND INTERVIEW WITH SMITH**

I later learned that Smith had told Officer Dodge that he again wished to speak with me. Officer Dodge told me that Smith had some additional information. During this contact, I was able to get additional details about the mode of travel from Milwaukee, which is when I learned they had left at approximately 11:30 and Dontrae had driven to Johnson Creek. I was during this time that Smith stated, "This is the catch" and Smith pointed his finger at me, which I immediately noticed to be shaking slightly and appeared to be somewhat uncontrollable. Smith told me they had missed an exit and had stopped at a motel, at which time Smith drove from Johnson Creek to PDQ which referenced the old gas station which is now Kwik Trip. Smith told me he had passed a Target store and also referenced the address of 3311 Prairie Road, which is down the road, according to Smith, from Target. Smith also referenced a school by the name of Savannah Oaks.

I was able to determine Smith was talking about a Kwik Trip on McKee Road near the Fitchburg Super Target, which is also on McKee Road. Next, Smith explained while at the gas station, he had gone into the center console and got coins out of the center console so he could put air in a tire. After Smith was done putting air in the tire, he got back into the passenger seat and Dontrae took over driving the rest of the way to the party at McKee Farms Park. Smith told me during the drive he had fallen asleep.

During my second contact with Smith, he told me that he believed he had seen a heavy object in Dontrae's front pocket of his hoodie that was weighing the hoodie down. Smith told me he could not

make out the outline of the gun, but was able to tell that something heavy was in the center pocket of the Dontrae's gray hoodie. Smith was adamant that the weight was significant enough that it was not a cell phone. Smith told me that he did not notice an extended clip, referencing a magazine of ammunition.

Smith told me Dontrae stays at his baby's mother's place in Milwaukee, somewhere near 6th Street and Keefe Street. Smith believed Dontrae has two children in common with a female named Bianca. I again asked Smith what he believed Dontrae's last name to be and Smith told me this time that he recalled looking up Dontrae's information in the past on Wiscsonsin CCAP. Smith told me that Dontrae wanted to look up a traffic ticket court date through Waukesha. Smith believed Dontrae's last name was either Williams or Wilson. After this, I asked Smith some additional details about Dontrae. Smith described Dontrae as being approximately 38 to 39 years of age, 6'00", 170 to 180lbs with a four inch "fro" hairstyle. Smith also explained Dontrae had what Smith called a keyloid. Smith explained this to be a bubble on Dontrae's left ear. Dontrae also has tattoos on both of his arms. Smith could not describe any of the tattoos on either of Dontrae's arms.

After gathering these details, Officer Dodge and I escorted Smith back to a secure holding cell.

**SEIZED CURRENCY**

Smith had a large amount of US Currency on his person at the time of his arrest. This currency was seized as evidence and transported to the Fitchburg Police Department. Once there the currency was counted and determined to be $2,636 US Dollars. The currency was recounted by Officer Dodge, Officer Stefanski, and Sgt. Ridgely. The currency was packaged, sealed, and placed into temporary locker #8.

**PAPERWORK**

Attached to this report is a Buccal swab consent form, which Smith completed.

**REQUESTED CHARGES**

In reference to this case, I am requesting Wright be charged with two counts of Felony Bail Jumping, in violation of Wisconsin State Statute 946.49(1)(b), due to Wright having two open cases in the State of Wisconsin. Wright has an open case 2024CF002931 and 2025CF415. In both of these cases, Wright has bail conditions which include not to be in possession of or use controlled substances without a prescription and no possession of weapons or firearms.

I am requesting Wright be charged with one count of Felon in Possession of a Firearm, in violation of Wisconsin State Statute 941.29(1m)(a), with an additional Party to a Crime enhancer violation of Wisconsin State Statute 939.05. I am requesting this charge as Wright is a convicted felon in the State of Wisconsin and was a party to the crime of felon in possession of a firearm. A records check was completed for Wright where it was learned that Wright is a convicted felon in the state of Wisconsin under case 2017CF004469 for Possess Firearm-Convicted of a Felony as well as several other felonies.

Lastly, I am requesting Wright be charged with one count of Possession of THC, in violation of Wisconsin State Statute 961.41(3g)(e),with the Party to a Crime enhancer, in violation of Wisconsin State Statute 939.05, due to Wright being in possession of Tetrahydrocannabinol (THC), Wright was in a vehicle with THC immediately next to his person.

I am requesting Smith be charged with violation of Wisconsin State Statute 941.29(1m)(a) for Felon in Possession of a Firearm, violation of Wisconsin State Statute 941.23(2) Carry a Concealed Weapon, violation of Wisconsin State Statute 941.26(1g)(a) Possession of Machine Gun, Wisconsin State Statute 961.41(3g)(c) for possession for cocaine, Wisconsin State Statute 946.49(1)(b) Felony Bail Jumping, and Wisconsin State Statute 961.41(1m)(h)1 Possession with Intent to Deliver THC(<=200 grams). I am requesting all of these charges due to Smith being a felon convicted in case 2013CF001952 and case 2019CF003638. Smith admitted to knowing he was a felon and Smith was in control of a vehicle where a loaded Glock 29 pistol chambered in 10mm with a machine gun conversion device also known as a "Switch" on the firearm. The firearm was located in the center console between the driver's seat and passenger seat. I am requesting Smith be charged with possession of cocaine due to 13.77 grams of cocaine being located in the driver's side door, which was immediately next to Smith. I am also requesting Smith be charged with possession with intent to deliver THC due to 113.01 grams of Tetrahydrocannabinol (THC) being located inside of the vehicle that Smith was in possession of and admitted to driving. Lastly, I am requesting the charge of felony bail jumping due to Smith having an open Wisconsin case number 2024CF03338 which has bail conditions to not be in possession of or use controlled substances without a prescription and no possession of weapons or firearms.

**PHOTOGRAPHS**

The photographs that were taken utilizing a department-issued cell phone were later downloaded to the Fitchburg Police Department digital server under this case number.

**EVIDENCE**

| ITEM | DESCRIPTION | LOCATION |
|---|---|---|
| Item 17 | Buccal swab from Javon A. Smith | Locker #8 |
| Item 18 | US currency, $2,636.00 | Locker #8 |
| Item 19 | Apple iPhone w/blue case, belonging to Wright | Cellphone locker #14 |
| Item 20 | Apple iPhone w/blue Mario case, belonging to Smith | Cellphone locker #9 |

**ROUTING**

Please forward a copy of this report to Court Officer Emily Shunk to be forwardedto the Dane County District Attorney's Office for their review.

**NO FURTHER ACTION TAKEN**

**OFFICER NIKOLAS R. GREENE**
**NRG/vlc**
**25-13116**
**06/16/25**